UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATTHEW HUGGINS,　　　　　　　　　　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　　07 CV 5313 (RJD) (VPP)
　　　　　　　Plaintiff,

　　　-against-

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for Washington
Mutual Bank, and FEDERAL DEPOSIT
INSURANCE CORPORATION, as Receiver for
First National Bank of Nevada, successor by
Merger to First National Bank of Arizona,

　　　　　　　Defendants.
-------------------------------------------------------------X

DEARIE, Chief Judge.

　　　In its capacity as Receiver for the defendant banks, the Federal Deposit Insurance Corporation ("FDIC") moves to dismiss plaintiff Matthew Huggins' complaint for lack of subject matter jurisdiction, arguing that Huggins failed to exhaust his administrative remedies. The motion is granted.

## DISCUSSION

　　　Huggins filed the complaint against Washington Mutual Bank ("WMB") and First National Bank of Arizona ("FNBA") in December 2007, claiming that he is entitled to the rescission of his home mortgage because the banks did not provide him with two copies of a notice that clearly and conspicuously disclosed the date that his right to cancel the mortgage expired, as required under the Truth in Lending Act. The banks denied liability. Subsequently, FNBA merged into First National Bank of Nevada ("FNBN") and shortly thereafter, both WMB and FNBN were deemed insolvent. The FDIC was appointed Receiver for both banks pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). On

October 20, 2008, the FDIC, pursuant to 12 U.S.C. § 1821(d)(12), was substituted for FNBA as the real party in interest in the litigation and was granted a 90-day stay. On February 3, 2009, the FDIC was substituted for WMB as the real party in interest in the litigation and was granted a 90-day stay.

As Receiver for WMB and FNBN, the FDIC succeeded to all of their rights, titles, powers, and privileges. See 12 U.S.C. § 1821(d)(2). Congress enacted FIRREA to establish a comprehensive administrative claims review process for the creditors and claimants of failed banks. See Walker v. Federal Deposit Insurance Corporation, 2009 WL 5216980, at *1 n.1 (D.N.J. Dec. 29, 2009). Thus, under FIRREA, FDIC is authorized to "determine" and to "allow" and "disallow" claims of creditors of the failed banks. Id. at *2 (citing §§ 1821(d)(3), (d)(5)(B), (C)(i), and (D)).

Title 12 U.S.C. §§ 1821(d)(3)-(13) sets forth the procedures by which the FDIC is authorized to resolve creditors' claims. Generally, the FDIC must provide notice to creditors of its appointment as receiver for the failed institution, informing creditors of the claims resolution process and the claims bar date. See 12 U.S.C. § 1821(d)(3)(B). If the creditor files a proof of claim before the claims bar date, the FDIC must either allow or disallow the claim and notify the creditor of its determination within 180 days. See id. § 1821(d)(5)(A)(i). If the claim is disallowed, the creditor may request further administrative review of the FDIC's determination or may "file suit on such claim (or continue an action commenced before the appointment of the receiver)" within 60 days of being notified of the FDIC's determination. Id. § 1821(d)(6)(A).

Here, the FDIC published notice to creditors of WMB in the Seattle Times and the Las Vegas Review Journal on October 1, 2008, October 31, 2008, and December 1, 2008, and the Wall Street Journal on October 1, 2008, and October 31, 2008. The notice informed WMB's

2

creditors that the claims bar date was December 30, 2008. Huggins did not submit a proof of claim by the claims bar date. Pursuant to § 1821(d)(5)(C), the FDIC mailed notice directly to Huggins on January 12, 2009, informing him that although the claims bar date had passed, the FDIC might still consider his claims if (1) Huggins filed a proof of claim by April 13, 2009, and (2) the FDIC determined that (a) Huggins did not receive actual notice of the FDIC's appointment as Receiver in time to file a proof of claim by the claims bar date and (b) the proof of claim was filed in time to permit payment. The notice informed Huggins that if the FDIC disallowed his claim or if he did not receive a disallowance within 180 days of filing, he had the "right to file a lawsuit on [his] claim (or continue any lawsuit commenced before the appointment of the [FDIC] as Receiver)." To date, Huggins has not filed a proof of claim.

The FDIC published notice to creditors of FNBN in the Arizona Business Gazzette, the Arizona Republic, the Reno Gazzette-Journal, the Las Vegas Review Journal and the Las Vegas Sun on July 31, 2008, September 1, 2008, and October 1, 2008. The notice informed creditors that the claims bar date was October 28, 2008. Huggins did not submit a proof of claim by the claims bar date. On April 24, 2009, the FDIC mailed notice directly to Huggins (with a copy to his counsel), notifying him that he was required to file a proof of claim and that if the claim were disallowed, he could continue his lawsuit in federal court. To date, Huggins has not filed a proof of claim.

The FDIC, relying on 12 U.S.C § 1821(d)(13)(D), argues that Huggins's failure to file a proof of claim divests the Court of subject matter jurisdiction. Section 1821(d)(13)(D) provides that "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed

receiver." See 12 U.S.C. § 1821(d)(13)(D); Carlyle Towers Condominium Association, Inc. v. Federal Deposit Insurance Corporation, 170 F.3d 301, 305 (2d Cir. 1999) ("FIRREA contains an exhaustion requirement applicable to claims against the assets of a failed institution in FDIC receivership.") (citing 12 U.S.C. §§ 1821(d)(5), (13)(D)). The exceptions, §§ 1821(d)(6)(A), (d)(8)(C) and (d)(8)(E), make crystal clear that judicial review is authorized only after a claimant files a proof of claim and the FDIC either denies the claim or fails to adjudicate the claim in a timely manner. See e.g., IndyMac Bank, F.S.B., v. MacPherson, 672 F. Supp. 2d 313, 317 (E.D.N.Y. 2009) (refusing to read an implied exception to exhaustion requirement for pre-receivership claims in face of clear and unambiguous statutory language).

Huggins, who as the party asserting jurisdiction bears the burden of demonstrating by a preponderance of the evidence that the Court has subject matter jurisdiction over his claims, see Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002), concedes that he has not filed proofs of claims with the FDIC and that "[g]enerally, a court is prohibited from exercising jurisdiction over a claim until the exhaustion of the [FDIC's] administrative process." (Opp. Br. at 5.) Nevertheless, he argues that the Court retains jurisdiction over his claims. The Court disagrees.

*A. Pre-receivership Claims*

Huggins first argues that because he filed his lawsuit before the FDIC's appointment as Receiver for WMB and FNBN, the Court "technically does not lose jurisdiction over the case" and it can reach the merits of his claims. (Opp. Br. at 5.) Huggins's attempt to create two statutory schemes -- one for lawsuits filed before the FDIC's appointment as Receiver, another for lawsuits filed after the FDIC's appointment -- is foreclosed by the express language of § 1821(d)(13)(D). As discussed, Congress has expressly provided that "except as otherwise provided in this subsection, no court shall have jurisdiction over" claims against failed

4

institutions for which the FDIC has been appointed receiver and the statutory exceptions make clear that judicial review is authorized only <u>after</u> a proof of claim has been filed with the FDIC.

While the Second Circuit has not directly addressed the issue, it has, as Judge Spatt detailed in <u>IndyMac</u>, routinely recognized the preclusive effect that FIRREA's exhaustion requirement has on a district court's jurisdiction over claims against the assets of failed banks. For example, in <u>Resolution Trust Corp. v. Elman</u>, the Circuit held that:

> We have confirmed recently that the statute means just what it says, and, accordingly, that a claimant must first present its case to the [FDIC] under the administrative procedure erected by FIRREA before seeking relief in the federal courts. . . . Until such time as the claim is disallowed by the [FDIC], 'no court shall have jurisdiction over . . . any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver.'

949 F.2d 624, 627 (2d Cir. 1991) (quoting 12 U.S.C. § 1821(d)(13)(D)(i)).

A few years later, the Circuit reaffirmed the "starkness" of the exhaustion requirement:

> [The FDIC's] authority to realize upon the assets of a failed institution, combined with its duty to protect creditors and depositors of that institution, supersedes, though it does not extinguish, any claim pending against the institution, or in this case, the institution's assets at the time [the FDIC] is appointed Receiver. While the starkness of such a conclusion is not lost on this court, its validity is well established in both this Circuit and others.

<u>Resolution Trust Corp. v. MacKenzie</u>, 60 F.3d 972, 977 (2d Cir. 1995) (citing <u>Elman</u>). Indeed, the <u>MacKenzie</u> panel cited with approval the Eighth Circuit's decision in <u>Bueford v. RTC</u>, 991 F.2d 481 (8th Cir. 1993), summarizing <u>Bueford</u> as holding that an "employment discrimination claim pending before district court at time [the FDIC] appointed receiver for defendant lending institution becomes suit against [the FDIC] and plaintiff is required to exhaust administrative remedies under FIRREA as jurisdictional prerequisite to further pursuing suit in district court." <u>Id.</u> (citing <u>Bueford</u>, 991 F.2d at 484). Further, in <u>Carlyle Towers Condominium Ass'n, Inc. v.</u>

5

F.D.I.C., 170 F.3d 301, 307 (2d Cir. 1999), the Circuit noted that it "is relatively clear that Congress intended claims to be presented for administrative review as a jurisdictional prerequisite to filing suit in a district court." Indeed, "[t]he primary purpose underlying FIRREA's exhaustion scheme is to allow [the FDIC] to perform its statutory function of promptly determining claims [of creditors] so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation," Walker, 2009 WL 5216980, at *5 (quoting Rosa v. RTC, 938 F.2d 383, 392 (3rd Cir. 1991) (citing H.R. Rep. No. 101-54(I), 101st Cong., 1st. Sess. 418-19, reprinted in 1989 U.S. Code Cong. & Admin. News 86, 214-15)), and this purpose "would appear to be undermined if claimants were able to circumscribe the exhaustion requirement but for the sheer fortuity that a claimant filed suit prior to the appointment of the receiver," id. at *6. Accordingly, the Court does not hesitate in joining the majority of courts that have concluded that a federal court cannot pass on the merits of pre-receivership claims where the plaintiff has not exhausted his remedies under the FDIC's claims resolution process. See Bueford, 991 F.2d at 484 n. 6 (noting that § 1821(d)(6)(A) provides that within 60 days of the FDIC's disallowance of a claim the claimant "may request administrative review of the claim ... or file suit on such claim (*or continue an action commenced before the appointment of the receiver*)" and that the italicized "language [] clearly indicate[s] that FIRREA is to be applied to pending actions") (emphasis added); Marquis v. F.D.I.C., 965 F.2d 1148, 1151 (1st Cir. 1992) ("FIRREA makes participation in the administrative review process mandatory for all parties asserting claims against the failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver."); RTC v. Mustang Partners, 946 F.2d 103, 106 (10th Cir. 1991) ("We agree with the district court's determination that a thorough reading of the applicable provisions in FIRREA fails to produce any language which could be

6

construed to support Mustang's argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver.").

*B. Estoppel / Notice*

Huggins next argues that his failure to exhaust his administrative remedies should be excused because the FDIC (1) misled him and the Court into believing that it intended to litigate his pre-receivership claims and forego the administrative claims process; (2) published notice of its appointment as receiver for the FNBN only in three local newspapers located in Arizona and Nevada; and (3) mailed him proof of claim forms that were constitutionally defective because they required him to make a materially false statement in violation of federal law.

Huggins misses the point: where Congress has, as here, mandated exhaustion of administrative remedies before the federal courts can exercise jurisdiction over a claim, the Supreme Court has "stress[ed] the point that *we will not read futility or other exceptions into statutory exhaustion requirements.*" Beharry v. Ashcroft, 329 F.3d 51, 57-58 (2d Cir. 2003) (quoting Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) (emphasis in Beharry)); cf. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002) (the "federal courts are creatures of limited jurisdiction and [] jurisdiction may not be conferred in any way by the parties -- including by means of waiver or estoppel") (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). And while the Second Circuit has recognized an "exceedingly narrow exception" to the general rule that exhaustion is required to prevent "manifest injustice," see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 52 (2d Cir. 2004) (citing Theodoropoulos v. INS, 358 F.3d 162, 172-73 (2d Cir. 2004)), the Court finds that under the circumstances of this case no manifest injustice would arise in the event that it declines to assume jurisdiction.

All is not necessarily lost for Huggins. To the extent that he decides to file the required proof of claims and is dissatisfied with the FDIC's adjudication, he can, pursuant to 12 U.S.C. § 1821(d)(6), return to federal court and continue this action. See IndyMac, 672 F. Supp. 2d at 318-19 (citing Carlyle Towers Condominium Ass'n, Inc. v. F.D.I.C., 170 F.3d 301, 307 (2d Cir. 1999) ("Whereas it is relatively clear that Congress intended claims to be presented for administrative review as a jurisdictional prerequisite to filing suit in a district court, it is far less clear that a claimant who submits an untimely claim and receives a disallowance is jurisdictionally barred from proceeding in district court.")). However, unless and until Huggins files the proof of claims with the FDIC and receives a disallowance, the Court does not have jurisdiction to hear his claims. To hold otherwise would sanction the circumvention of the administrative scheme that Congress entrusted the FDIC to administer to efficiently and uniformly resolve claims against the assets of failed institutions. The Court is not willing to do so under these circumstances.

## CONCLUSION

For the reasons stated above, the FDIC's motion to dismiss Huggins's complaint in its entirety is granted.

SO ORDERED.

Dated: Brooklyn, New York
September 2̲8̲, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge